ORIGINAL

HECTOR CANALES-ROBLES
SID # 16888023
SAAMIR LOPEZ-CERVANTES
SID # 17288720
Oregon State Correctional Institution
3405 Deer Park Drive SE
Salem, OR 97310
Telephone:    None
Email:    None

FILED 08 JUL '16 16:03 USDC-ORE

Plaintiffs *Pro Se*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| HECTOR FERNANDO CANALES-ROBLES, <br> SAAMIR LOPEZ-CERVANTES, <br><br> Plaintiffs, <br><br> vs. <br><br> COLETTE S. PETERS, former Director, Oregon <br> Youth Authority (OYA) and current Director, <br> Oregon Department of Corrections (ODOC); <br> MAX WILLIAMS, former Director, ODOC; <br> ROBERT JESTER, former Director, OYA; <br> BOBBY MINK, former Director, OYA; <br> DARIN HUMPHRIES, former Superintendent, <br> MacLaren Youth Correctional Facility (MacLaren <br> Youth Correctional Facility (MacLaren); <br> MICHAEL RIGGINS, former Superintendent, <br> MacLaren; <br> DAN BERGER, former Superintendent, MacLaren; <br> SID THOMPSON, former Superintendent, <br> MacLaren; <br> DAVID HANSEN, former Manager, Secure <br> Intensive Treatment Program (SITP), MacLaren; <br> JOHN AND JANE DOES #1-20, OYA employees, <br> agents and/or contractors whose identities are not <br> currently known to Plaintiffs, each sued in their <br> individual and official capacities, <br><br> Defendants. | USDC No. 6:16-cv-1395-AC <br><br> **VERIFIED COMPLAINT** <br> Civil Rights, 42 USC § 1983: <br> Interference/Denial of Access to the <br> Courts, 1st and 14th Amends, US <br> Const.; Denial of Equal Protection of <br> the Law, 14th Amend., US Const. <br><br> Supplemental Jurisdiction Claims: <br> Interference/Denial of Access to the <br> Courts, Article I, §§ 1, 8, and 10, Or. <br> Const.; Unnecessary Rigor, Art. I, § <br> 13, Or. Const.; and Denial of Equal <br> Protection of the Law, Art., I, § 20, <br> Or. Const. <br><br><br> **JURY TRIAL DEMANDED** |

Page: 1 of 42 – VERIFIED COMPLAINT (42 USC § 1983)

## INTRODUCTORY STATEMENT

1.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983, by **HECTOR FERNANDO CANALES-ROBLES,** and **SAAMIR LOPEZ-CERVANTES,** who are both currently prisoners confined within the legal and physical custody of the Oregon Department of Corrections (ODOC) at the Oregon State Correctional Institution (OSCI), in Salem, Oregon. Both Plaintiffs were juveniles at the time of their commitment offenses and were sentenced to the legal custody of the ODOC but confined in the physical custody of the Oregon Youth Authority (OYA) for their protection, pursuant to ORS 137.124(5)(a)(B) and OAR 291-052-0015(1). At all times that both Plaintiffs were confined in OYA physical custody, Defendants deprived them of access to a law library, and necessary legal assistance and materials which deprived them of appellate remedies to challenge their convictions and sentences via post-conviction relief (PCR) pursuant to ORS 138.510 to 138.680 and/or federal habeas corpus actions, pursuant to 28 USC § 2254. The acts and omissions of Defendants deprived Plaintiffs of their fundamental constitutional right to meaningful access to the courts and interfered with their meaningful access to the courts, in violation of the First and Fourteenth Amendments to the United States Constitution. As a result of Defendants' acts and omissions, Plaintiff missed the filing deadlines for both a PCR action and federal habeas corpus action, depriving them of at least six appellate remedies that would have otherwise been available to them to challenge their criminal convictions and sentences. Plaintiffs had meritorious claims to raise in both PCR and federal habeas corpus. Plaintiffs were improperly deprived of legal rights and privileges that they would have been afforded had they been confined in the physical custody of the ODOC, solely on basis of their status as juvenile offenders, in violation of their right to equal protection of the

law under the Fourteenth Amendment to the United States Constitution. Plaintiffs bring supplemental jurisdiction claims related to the denial of meaningful access to the courts and equal protection of the law under Article I, sections 1, 8, 10, and 20, of the Oregon Constitution. Plaintiffs sue Defendants in their official capacities for declaratory and injunctive relief, and in their individual capacities for monetary damages. Plaintiff seeks an award of reasonable costs and attorneys' fees pursuant to 42 USC § 1988 and such other relief as this Court deems just and equitable. Plaintiffs request a jury trial.

## JURISDICTION & VENUE

2.

This Court has subject matter jurisdiction over Plaintiff's claims of violation of federal constitutional rights, seeking prospective declaratory and injunctive relief, pursuant to 28 U.S.C. §§ 1331(a) and 1343 because the causes of action arise under 42 USC § 1983.

3.

Venue is properly before this Court pursuant to 28 U.S.C. § 1391(b) because the acts and omissions giving rise to Plaintiff's claims occurred in the District of Oregon and because Defendants are subject to the personal jurisdiction in the District of Oregon.

## PARTIES

4.

Plaintiff, **HECTOR FERNANDO CANALES-ROBLES** is, and was at all times relevant, an inmate of the ODOC. On or about March 20, 2008, Plaintiff was sentenced to the legal custody of the ODOC for a period of 180 months in *State of Oregon v. Hector Fernando Canales-Robles,* Lincoln County Circuit Court No. 071791. At the time of his April 28, 2007 criminal offense, Plaintiff was seventeen (17) years old, and was therefore, confined in OYA

physical custody at the MacLaren Youth Correctional Facility (MacLaren) until being transferred to the physical custody of ODOC on his twenty-fifth (25th) birthday, pursuant to ORS 137.124 (5)(a)(B) and OAR 291-052-0015(1). Plaintiff was confined at MacLaren from March 25, 2008 until August 1, 2014. The entire time that Plaintiff was confined at MacLaren, Defendant deprived him of meaningful access to the court and otherwise interfered with his court access by depriving him of legal materials and assistance. As a result, Plaintiff was deprived of the ability to file timely post-conviction relief (PCR) and federal habeas corpus actions, thereby foreclosing at least six appellate remedies that would have otherwise been available to him.

5.

Plaintiff, **SAAMIR LOPEZ-CERVANTES** is, and was at all times relevant, an inmate of the ODOC. On or about September 30, 2008 and April 12, 2010, Plaintiff was sentenced to the legal custody of the ODOC for a period of 132 months in *State of Oregon v. Saamir B. Lopez-Cervantes,* Multnomah County Circuit Court Nos. 0804-31412, 0804-31676 and 09-09-33897. At the time of his 2008 criminal offenses, Plaintiff was seventeen (17) years old and on or about September 30, 2008, Plaintiff was committed to OYA physical custody pursuant to ORS 137.124(5)(a)(B); and OAR 291-052-0015(1), and housed at the Hillcrest Youth Correctional Facility, 2450 Strong Rd., SE, Salem, OR 97302 (Hillcrest). Plaintiff was transferred to Rogue Valley Youth Correctional Facility, 2001 NE F Street, Grants Pass, OR 97526 (Rogue Valley) in September 2010, and to MacLaren in June 2011.  Plaintiff was confined in the physical custody of OYA until being transferred to the physical custody of ODOC on his twenty-fifth (25th) birthday. Plaintiff was confined in OYA physical custody from September 30, 2008 until March 25, 2015. The entire time that Plaintiff was confined in OYA physical custody, Defendants deprived him of meaningful access to the court and otherwise interfered with his court access by

depriving him of legal materials and assistance. As a result, Plaintiff was deprived of the ability

to file timely post-conviction relief (PCR) and federal habeas corpus actions, thereby foreclosing

at least six appellate remedies that would have otherwise been available to him.

6.

Defendant **ROBERT JESTER** was the OYA director from March 2004 until October

2008. OYA is a state agency whose principal business offices are located at 530 Center Street

NE, Suite 200, Salem, Oregon. In his capacity as OYA director, his official duties and

responsibilities included, but were not limited to, the supervision of the delivery of services and

coordination of programs in youth correctional facilities. Defendant Jester was personally

involved in the violations alleged herein and is sued in his individual and official capacities.

7.

Defendant **BOBBY MINK** was the interim director of OYA from October 2008 until

October 2009. In his capacity as OYA director, his official duties and responsibilities included,

but were not limited to, the supervision of the delivery of services and coordination of programs

in youth correctional facilities. Defendant Mink was personally involved in the violations alleged

herein and is sued in his individual and official capacities.

8.

Defendant **COLETTE PETERS** was the OYA director from October 2009 until

February 2012. In her capacity as OYA director, her official duties and responsibilities included,

but were not limited to, the supervision of the delivery of services and coordination of programs

in youth correctional facilities. Between February 2012 and the present, Defendant Peters was

and is ODOC director. In her capacity as ODOC director, she was ultimately responsible for

youth offenders sentenced to the legal custody of ODOC but serving sentences in OYA physical

custody. Defendant Peters was personally involved in the violations alleged herein and is sued in his individual and official capacities.

9.

Defendant **FARIBORZ PAKSERESHT** was the OYA director from February 2012 until Plaintiff Lopez-Cervantes was transferred to ODOC physical custody on or about March 25, 2015. In her capacity as OYA director, her official duties and responsibilities included, but were not limited to, the supervision of the delivery of services and coordination of programs in youth correctional facilities. Defendant Pakseresht was personally involved in the violations alleged herein and is sued in her individual and official capacities.

10.

Defendant **MAX WILLIAMS,** was the ODOC director from Plaintiff Canales-Robles' March 25, 2008 confinement in OYA physical custody until December 31, 2011. In his capacity as ODOC director, he was ultimately responsible for youth offenders sentenced to the legal custody of ODOC but serving sentences in OYA physical custody. Defendant Williams was personally involved in the violations alleged herein and is sued in his individual and official capacities.

11.

Defendant **DARIN HUMPHRIES** was the superintendent of MacLaren during a portion of the time that Plaintiffs Canales-Robles and Lopez-Cervantes were confined within OYA physical custody at MacLaren. His official duties and responsibilities included, but were not limited to, the delivery of services and coordination of programs in the facility. Defendant Humphries was personally involved in the violations alleged herein and he is sued in his individual and official capacities.

12.

Defendant **MICHAEL RIGGINS** was the superintendent of MacLaren during a portion

of the time that Plaintiffs Canales-Robles and Lopez-Cervantes were confined within OYA

physical custody at MacLaren. His official duties and responsibilities included, but were not

limited to, the delivery of services and coordination of programs in the facility. Defendant

Riggins was personally involved in the violations alleged herein and he is sued in his individual

and official capacities.

13.

Defendant **DAN BERGER** was the superintendent of MacLaren during a portion of the

time that Plaintiffs Canales-Robles and Lopez-Cervantes were confined within OYA physical

custody at MacLaren. His official duties and responsibilities included, but were not limited to,

the delivery of services and coordination of programs in the facility. Defendant Berger was

personally involved in the violations alleged herein and he is sued in his individual and official

capacities.

14.

Defendant **SID THOMPSON** was the superintendent of MacLaren during a portion of

the time that Plaintiffs Canales-Robles and Lopez-Cervantes were confined within OYA physical

custody at MacLaren. His official duties and responsibilities included, but were not limited to,

the delivery of services and coordination of programs in the facility. Defendant Thompson was

personally involved in the violations alleged herein and he is sued in his individual and official

capacities.

15.

Defendant **DAVID HANSEN** was the manager of the Secure Intensive Treatment Unit

(SITP) at MacLaren during a portion of the time that Plaintiffs Canales-Robles was confined within OYA physical custody at MacLaren. His official duties and responsibilities included, but were not limited to, the delivery of services and coordination of programs in the facility. Defendant Hanson was personally involved in the violations alleged herein and he is sued in his individual and official capacities.

16.

**DEFENDANT JOHN AND JANE DOES** 1-20 were at all times relevant, agents and/or employees of the OYA and/or ODOC who were personally involved in the violations alleged herein. They are sued in their individual capacities and official capacities. Once Plaintiffs learn the identities of said DOE DEFENDANTS through discovery, they will amend their complaint to replace their DOE designation with their correct and proper legal names and titles.

17.

At all times relevant all Defendants have acted under "color of state law."

### FACTUAL BACKGROUND

18.

On or about March 20, 2008, Plaintiff Canales-Robles was sentenced to 180 months in the legal and physical custody of the ODOC, in *State of Oregon v. Hector Fernando Canales-Robles,* Lincoln County Circuit Court No. 071791, for crimes committed on or about April 28, 2007.

19.

At the time of Plaintiff Canales-Robles' April 28, 2007 criminal offenses in *State of Oregon v. Hector Fernando Canales-Robles,* Lincoln County Circuit Court No. 071791, Plaintiff was seventeen (17) years old.

20.

At the time of sentencing, on March 20, 2008, Plaintiff Canales-Robles was eighteen (18) years old.

21.

On or about September 30, 2008 and April 12, 2010, Plaintiff Lopez-Cervantes was sentenced to 132 months in the legal and physical custody of the ODOC in *State of Oregon v. Saamir B. Lopez-Cervantes,* Multnomah County Circuit Court Nos. 0804-31676, 0803-31412 and 0909-33897 for crimes committed on or about January 9, 2008, February 8, 2008 and March 14, 2008.

22.

At the time of Plaintiff Lopez-Cervantes' criminal offenses in *State of Oregon v. Saamir B. Lopez-Cervantes,* Multnomah County Circuit Court Nos. 0804-31676, 0803-31412 and 0909-33897, Plaintiff was seventeen (17) years old.

23.

At the time of sentencing, on September 30, 2008, Plaintiff Lopez-Cervantes was eighteen (18) years old.

24.

"When a person under 18 years of age at the time of committing the offense and under 20 years of age at the time of sentencing is committed to the Department of Corrections under ORS 137.707, the Department of Corrections shall transfer the physical custody of the person to the Oregon Youth Authority as provided in ORS 420.011 if: . . . (B) The Department of Corrections and the Oregon Youth Authority determine that, because of the person's age, immaturity, mental or emotional condition or risk of physical harm to the person, the person should not be

incarcerated initially in a Department of Corrections institution." ORS 137.124(5)(a)(B); and OAR 291-052-0015(1).

25.

"A person placed in the custody of the Oregon Youth Authority under this subsection shall be returned to the physical custody of the Department of Corrections whenever the Director of the Oregon Youth Authority, after consultation with the Department of Corrections, determines that the conditions and circumstances that warranted the transfer of custody under this subsection are no longer present." ORS 137.124(5)(b).

26.

"In no case may a youth offender be retained in a youth correction facility after the youth offender has attained 25 years of age." ORS 419C.495(2); and OAR 291-052-0035(3).

27.

"When an inmate in the physical custody of the Oregon Youth Authority reaches 24 years and 11 months of age and will not complete the prison term imposed prior to reaching 25 years of age, the Oregon Youth Authority shall arrange transfer of the inmate back to the Department of Corrections physical custody, . . . ." OAR 291-052-0035(3).

28.

Pursuant to ORS 137.124(5)(a)(B); and OAR 291-052-0015(1), on or about March 25, 2008, Plaintiff Canales-Robles was committed to OYA physical custody of the and confined at the MacLaren Youth Correctional Facility, 2630 N. Pacific Hwy., Woodburn, OR 97071-9165 (MacLaren).

29.

Plaintiff Canales-Robles was confined at MacLaren from approximately March 25, 2008

Page: 10 of 42 – VERIFIED COMPLAINT (42 USC § 1983)

until August 1, 2014.

30.

Pursuant to ORS 137.124(5)(a)(B); and OAR 291-052-0015(1), on or about September 30, 2008, Plaintiff Lopez-Cervantes was committed to OYA physical custody and confined at Hillcrest. Plaintiff was transferred to Rogue Valley in September 2010, and to MacLaren in June 2011.

31.

Plaintiff Lopez-Cervantes was confined within OYA physical custody from approximately September 30, 2008 until March 25, 2015, excluding a period of approximately six months when he was confined in the Multnomah County Detention Center from approximately October 2009 to April 12, 2010.

32.

Plaintiff Canales-Robles filed a direct appeal of his conviction and sentence to the Oregon Court of Appeals in *State of Oregon v. Hector Fernando Canales-Robles,* Court of Appeals No. A138477.

33.

On or about November 25, 2009, the Oregon Court of Appeals entered an order affirming Plaintiff Canales-Robles' convictions and sentence without an opinion. *State of Oregon v. Hector Fernando Canales-Robles,* 232 Or App 285, 222 P.3d 53 (2009). The Oregon Supreme Court entered an order denying the Petition for Review in *State of Oregon v. Hector Fernando Canales-Robles,* 347 Or 718, 226 P.3d 709 (2010) on or about February 18, 2010 and the Oregon Court of Appeals issued the Appellate Judgment on or about April 14, 2010, closing the appeal in *State of Oregon v. Hector Fernando Canales-Robles,* Court of Appeals No. A138477, and

Supreme Court No. S058077.

34.

Plaintiff Lopez-Cervantes was precluded from filing a direct appeal of his convictions

and sentence by virtue of his guilty pleas, pursuant to ORS 138.050.

35.

Both Plaintiffs Canales-Robles and Lopez-Cervantes were eligible to file collateral

appeals of their convictions and sentences under Oregon's Post-Conviction Relief Act (PCRA),

codified as ORS 138.510 to 138.680. ORS 138.510(1)

36.

ORS 138.510(3) imposes a two-year statute of limitations for filing a post-conviction

relief (PCR) action, calculated in relevant part:

> A petition pursuant to ORS 138.510 to 138.680 must be filed within two years of
> the following, unless the court on hearing a subsequent petition finds grounds for
> relief asserted which could not reasonably have been raised in the original or
> amended petition:
>
> (a) If no appeal is taken, the date the judgment or order on the conviction was
> entered in the register.
>
> (b) If an appeal is taken, the date the appeal is final in the Oregon appellate courts.

37.

Pursuant to ORS 138.510(3)(b), the statute of limitations for Plaintiff Canales-Robles to

file a PCR action expired on or about April 14, 2012 (i.e., two years after the April 14, 2010

issuance of the Appellate Judgment in *State v. Canales-Robles,* Court of Appeals No. A138477,

and Supreme Court No. S058077.

38.

Plaintiff Canales-Robles has meritorious ineffective assistance of trial counsel claims, in

Page: 12 of 42 – VERIFIED COMPLAINT (42 USC § 1983)

violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 11, of the Oregon Constitution, which could have been asserted in a state post-conviction relief (PCR) action pursuant to ORS 138.510 to 138.680.

39.

The acts and omissions of Defendants alleged herein precluded Plaintiff Canales-Robles from filing a timely state PCR action pursuant to ORS 138.510 to 138.680 on or before April 14, 2012.

40.

The Judgments in *State v. Lopez-Cervantes,* Multnomah County Circuit Court Nos. 08-04-31676; and 0803-31412 were entered in the register on or about November 12, 2008. The Judgment against him in Multnomah County Circuit Court No. 0909-33897 was entered on or about April 12, 2010.

41.

Pursuant to ORS 138.510(3)(a), the statute of limitations for Plaintiff Lopez-Cervantes to file a PCR action expired on or about November 12, 2010 in Case Nos. 0804-31676 and 0803-31412 and on or about April 13, 2012 in Case No. 0909-33897 (i.e., two years after the judgments were entered by the trial court).

42.

Plaintiff Lopez-Cervantes has meritorious ineffective assistance of trial counsel and involuntary plea claims, in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 11, of the Oregon Constitution, which could have been asserted in a state post-conviction relief (PCR) action pursuant to ORS 138.510 to 138.680.

43.

The acts and omissions of Defendants alleged herein precluded Plaintiff Lopez-Cervantes

from filing a timely state PCR action pursuant to ORS 138.510 to 138.680 on or before

November 12 2010 or April 13, 2012.

44.

Both Plaintiffs Canales-Robles and Lopez-Cervantes were eligible to file a petition for a

writ of habeas corpus, challenging their convictions and sentences, pursuant to 28 USC § 2254.

45.

Federal law imposes a one-year statute of limitations for filing a federal habeas petition,

calculated in relevant part:

> (d)(1) A 1-year period of limitations shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a State court.
> The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;
>
> * * * * *
>
> (2) The time during which a properly filed application for State post-conviction or
> other collateral review with respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation under this section.

28 USC § 2244(d)(1).

46.

Pursuant to 28 USC § 2254(b)(1)

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears
> that –
>
> (A) the applicant has exhausted the remedies available in the court of the State; or
>
> (B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

47.

To exhaust the remedies available in the court of the State, as required by 28 USC § 2254(b)(1)(A), Plaintiffs Canales-Robles and Lopez-Cervantes were required to file post-conviction relief (PCR) actions and appeals thereof, pursuant to ORS 138.510 to 138.680, within the statute of limitations periods referenced in paragraphs 37 and 41, supra.

48.

The acts and omissions of Defendants alleged herein precluded Plaintiffs Canales-Robles and Lopez-Cervantes from exhausting state court remedies as required by 28 USC § 2254(b)(1)(A), by filing a timely PCR action.

49.

Pursuant to 28 USC § 2244(d)(1)(A) the statute of limitations for Plaintiff Canales-Robles to file a federal habeas corpus action under 28 USC § 2254 expired on or about April 14, 2011.

50.

Plaintiff Canales-Robles has meritorious claims, including but not limited to ineffective assistance of trial counsel claims, in violation of the Sixth and Fourteenth Amendments to the United States Constitution, which could have been asserted in a federal habeas corpus action pursuant to 28 USC § 2254.

51.

The acts and omissions of Defendants alleged herein precluded Plaintiff Canales-Robles from filing a timely federal habeas corpus action pursuant to 28 USC § 2254 on or before April 14, 2011.

Page: 15 of 42 – VERIFIED COMPLAINT (42 USC § 1983)

52.

Pursuant to 28 USC § 2244(d)(1)(A) the statute of limitations for Plaintiff Lopez-Cervantes to file a federal habeas corpus action under 28 USC § 2254 expired on or about November 12, 2009 (Case Nos. 0804-31676 & 0803-31412) and April 13, 2013 (Case No. 0909-33897).

53.

The acts and omissions of Defendants alleged herein precluded Plaintiff Lopez-Cervantes from filing a timely federal habeas corpus action pursuant to 28 USC § 2254 on or before November 12, 2009 (Case Nos. 0804-31676 & 0803-31412) and April 13, 2011 (Case No. 0909-33897).

54.

At the time of their commitment to OYA physical custody, Plaintiffs Canales-Robles and Lopez-Cervantes had not yet graduated from high school, given that they were in their junior year of high school when the offenses were committed.

55.

Plaintiff Canales-Robles required the assistance of Spanish speaking interpreters during his trial and sentencing proceedings in the underlying criminal case in *State v. Canales-Robles,* Lincoln County Circuit Court No. 071791.

56.

Plaintiffs Canales-Robles and Lopez-Cervantes have no legal knowledge, training or experience of any kind.

57.

In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491 (1977), the United States Supreme Court

held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. *See also Lewis v. Casey,* 518 U.S. 343, 347, 116 S.Ct. 2174 (1996)

58.

"Prison officials must both eliminate undue barriers to inmate [court] access and 'shoulder affirmative obligations to assure all prisoners meaningful access to the courts." *Bounds,* 430 U.S., at 824.

59.

"[T]he cost of protecting a constitutional right cannot justify its total denial." *Bounds,* 430 U.S. at 825.

60.

For juveniles, courts have held that meaningful access [to the courts] requires access to counsel to allow children to assert violations of their civil rights related to their incarceration." *R.G. v. Koller,* 415 F.Supp.2d 1129, 1161 (D. Hawaii 2006)(citing *John L. v. Adams,* 969 F2d 228, 230 (6th Cir. 1992)).

61.

"Meaningful access to the courts cannot be assured for juveniles, as both sides agreed in *John L.,* absent access to an attorney." *Knop v. Johnson,* 977 F2d 996, 999 (6th Cir. 1992).

62.

Defendants did not provide OYA prisoners access to attorneys at any time during the confinement of Plaintiffs Canales-Robles and Lopez-Cervantes in OYA physical custody between March 25, 2008 until March 25, 2015.

63.

Defendants did not provide OYA prisoners access to a law library of any kind, assistance from persons trained in the law, or any other provisions of "assist[ing] [OYA] inmates in the preparation and filing of meaningful legal papers," 430 U.S. at 828, at any time during the confinement of Plaintiffs Canales-Robles and Lopez-Cervantes within OYA physical custody between March 25, 2008 until March 25, 2015.

64.

On or about October 31, 2011, Defendant Peters signed an OYA Policy Statement dealing with the subject of "Offender Legal Assistance [Facility]." (OYA Legal Assistance Policy).

65.

Prior to October 31, 2011, there was no written OYA Policy Statement or rule dealing with the subject of "Offender Legal Assistance [Facility]."

66.

The OYA Legal Assistance Policy became effective on October 31, 2011, and remained in force and effect until at least the March 25, 2015 transfer of Plaintiff Lopez-Cervantes to the physical custody of ODOC.

67.

The October 31, 2011 OYA Legal Assistance Policy provides that the purpose of the policy is to "provide[] general standards for addressing offender attorney legal assistance in OYA facilities, including legal correspondence and communication."

68.

The October 31, 2011 OYA Legal Assistance Policy provides that "OYA recognizes

offenders committed to facilities have the right to consult privately with legal counsel and have access to courts, without obstruction or interference by staff."

69.

The October 31, 2011 OYA Legal Assistance Policy provides: "Offenders who have concerns regarding issues that require legal representation or assistance may obtain an attorney licensed to practice in the State of Oregon at their own expense."

70.

The October 31, 2011 OYA Legal Assistance Policy addresses: (1) confidentiality of communication between an offender and his attorney; (2) the offender's right to retain confidential legal documents; (3) a prohibition upon offender harassment, intimidation, punishment and retaliation for presenting complaints to the courts, participating in litigation or communicating with their attorneys; (4) scheduling legal visits; (5) attorney telephone calls; and (6) "Offender legal materials."

71.

The October 31, 2011 OYA Legal Assistance Policy does not expressly provide for access to a law library or assistance from persons who are trained in the law (beyond the prisoner's right to retain counsel at his own expense).

72.

Under the heading "Offender legal materials," the October 31, 2011 OYA Legal Assistance Policy states:

> G.   Offender legal materials
>
> 1.   A copy of the current directory of attorneys in Oregon must be maintained at each OYA facility and be accessible to offenders.
>
> 2.   Copies of the following legal resources must be maintained at each OYA

facility and be accessible to offenders:

a)      Oregon Revised Statute, chapter 138;

b)      Federal Habeas Corpus Statute;

c)      Local Rules for the District Court of Oregon and the Ninth Circuit Court;

d)      Federal Rules of Civil Procedure; and

e)      Oregon Administrative Rules, Chapter 416 [Oregon Youth Authority Rules, OAR 416-001-0000 to OAR 416-800-0095].

73.

The legal resources referenced in paragraph 72 supra, as listed in Section G2(b) through (e) of the October 31, 2011 OYA Legal Assistance Policy would not assist a prisoner in filing meaningful PCR legal papers in any way, insofar as the items in subsection (b) through (d) address federal court actions, and the item in subsection (e) is the OYA administrative rules.

74.

The only legal resource referenced in paragraph 72 *supra*, that could possibly have assisted Plaintiffs in filing PCR actions between October 31, 2011 and the March 25, 2015 transfer of Plaintiff Lopez-Cervantes to ODOC physical custody was "Oregon Revised Statute, chapter 138" in subsection G2(a).

75.

Between October 31, 2011 and his August 1, 2014 transfer to ODOC physical custody, Plaintiff Canales-Robles never saw "Oregon Revised Statute, chapter 138" at MacLaren or "accessible to [Plaintiff]."

76.

Between October 31, 2011 and his March 25, 2015 transfer to ODOC physical custody,

Plaintiff Lopez-Cervantes never saw "Oregon Revised Statute, chapter 138" within any OYA facilities or "accessible to [Plaintiff]."

77.

In *Lewis* the Supreme Court held that "[t]he tools [*Bounds*] required to be provided are those that the inmate needs to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." 518 U.S. at 355.

78.

The October 31, 2011 OYA Legal Assistance Policy does not require OYA "to . . . provide[] [the tools] . . . that [Plaintiffs] need[ed] to attack [their] sentences, directly or collaterally[.]"

79.

Between March 25, 2008 and the March 25, 2015 transfer of Plaintiff Lopez-Cervantes to the physical custody of the ODOC, Defendants did not make necessary legal resources accessible to Plaintiffs Canales-Robles, Lopez-Cervantes or other OYA prisoners, including but not necessarily limited to any of the legal research materials listed in Exhibit 1 of this Complaint.

80.

Between March 25, 2008 and the March 25, 2015 transfer of Plaintiff Lopez-Cervantes to the physical custody of the ODOC, Defendants did not make assistance from persons trained in the law available to Plaintiffs Canales-Robles, Lopez-Cervantes or other OYA prisoners.

81.

Plaintiffs Canales-Robles and Lopez-Cervantes were sentenced to the legal custody of the ODOC but the physical custody of OYA, for their protection as youthful offenders pursuant to ORS 137.124(5)(a)(B) and OAR 291-052-0015(1).

82.

Had Plaintiffs Canales-Robles and/or Lopez-Cervantes been sentenced to physical custody of the ODOC they would have had access to all of the legal resources referenced in Exhibit 1 of this Complaint, between March 25, 2008 and March 25, 2015. *See e.g.,* OAR 291-139-0005 to OAR 291-139-0045, and Exhibit 1, thereto.

83.

Between March 25, 2008 and March 25, 2015, Plaintiffs Canales-Robles and Lopez-Cervantes did not have any access to any of the legal resources referenced in Exhibit 1 of this Complaint, between March 25, 2008 and March 25, 2015.

84.

Had Plaintiffs Canales-Robles and/or Lopez-Cervantes been sentenced to the physical custody of the ODOC, they would have had the assistance of Inmate Legal Assistants to help them prepare and present their PCR claims between March 25, 2008 and March 25, 2015. *See, e.g.,* OAR 291-139-0015(2); OAR 291-139-0010(4) & (5); and OAR 291-139-0005.

85.

Between March 25, 2008 and March 25, 2015, Plaintiffs Canales-Robles and Lopez-Cervantes did not have the assistance of Inmate Legal Assistants to help them prepare and present their PCR claims between March 25, 2008 and March 25, 2015.

86.

Had Plaintiffs Canales-Robles and/or Lopez-Cervantes been sentenced to the physical custody of the ODOC they would have had access to pre-made forms for filing Petitions for Post-Conviction Relief (PCR) and instructions on how to prepare and file those petitions.

87.

Between March 25, 2008 and March 25, 2015, Plaintiffs Canales-Robles and Lopez-Cervantes did not have any access to pre-made forms for filing Petitions for Post-Conviction Relief (PCR) and instructions on how to prepare and file those petitions.

88.

Had Plaintiffs Canales-Robles and/or Lopez-Cervantes been sentenced to the physical custody of the ODOC but transferred to an out-of-state prison, they would have had the right to "access Oregon legal research materials and assistance from assigned inmate legal assistants through correspondence directed to a library coordinator of an Oregon correctional facility. Requests for law library services from Oregon inmates in out-of-state facilities will be processed with reasonable diligence." OAR 291-139-0035(6); *Stahlman v. Mills,* 238 Or App 606, 243 P.3d 786 (2010); and *Roy v. Lampert,* 455 F.3d 945 (9th Cir. 2006).

89.

Between at least March 25, 2008 and March 15, 2015, ODOC and OYA had no agreement or process in place comparable to that referenced in paragraph 88, supra, whereby youthful offenders who were sentenced to the legal custody of the ODOC but the physical custody of OYA could "access Oregon legal research materials and assistance from assigned inmate legal assistants through correspondence directed to a library coordinator of an [ODOC] facility." OAR 291-139-0035(6).

90.

Between March 25, 2008 and March 25, 2015, Plaintiffs Canales-Robles and Lopez-Cervantes were not able to "access Oregon legal research materials and assistance from assigned inmate legal assistants through correspondence directed to a library coordinator of an [ODOC]

facility," OAR 291-139-0035(6), while they was housed in the physical custody of OYA but the legal custody of ODOC.

91.

Between March 25, 2008 and March 25, 2015, Plaintiffs Canales-Robles and Lopez-Cervantes had no access at all to Oregon legal research materials or assistance from persons trained in the law necessary to assist them in preparing and filing a post-conviction relief (PCR) action pursuant to ORS 138.510 to 138.680, an appeal of a PCR decision, and/or a federal habeas corpus proceedings pursuant to 28 U.S.C. § 2254.

92.

When Plaintiff Canales-Robles arrived at MacLaren, he asked to use the law library and was told that MacLaren does not have a law library.

93.

On December 14, 2006 MacLaren Superintendent Mike Conzoner stated: "We do not maintain a law library at MacLaren. However, youth always have the right to contact their attorney or the Juvenile Rights Project (JRP)."

94.

The Juvenile Rights Project does not assist MacLaren prisoners with filing post-conviction relief (PCR) actions, appeals or federal habeas corpus actions.

95.

Plaintiff Canales-Robles was placed in the Secure Intensive Treatment Program (SITP) from approximately April 1, 2008 until the program was terminated in October 2010.

96.

MacLaren prisoners who appeal their convictions and sentences are punished by being

barred from advancing through the six-level "Tag System," in which youth obtain increasing privileges within the prison system.

97.

Plaintiff Canales-Robles was subjected to the "Tag System" and was told that he would not be permitted to advance through the levels if he had an appeal pending.

98.

Advancement through the "Tag System" resulted in increasing freedoms, privileges and amenities.

99.

Between at least March 25, 2008 and March 25, 2015, it was the policy and practice of Defendants that prisoners with any type of pending legal proceedings, including appeals and collateral challenges of convictions and sentences, would not advance through the "Tag System" beyond the low level of "Green 25."

100.

Based upon the policy and practice referenced in paragraph 99, supra, prisoners with pending legal proceedings were denied freedoms, privileges and amenities that youth who did not have pending legal proceedings were entitled to.

101.

Between at least March 25, 2008 and March 25, 2015, it was the policy and practice of Defendants that prisoners who pursued legal challenges to their convictions and sentences were precluded from participating in the Violent Offender Group, which was a requirement for SITP placement.

102.

Between at least March 25, 2008 and March 25, 2015, it was the policy and practice of Defendants that prisoners could face discipline and removal from SITP for pursuing legal challenges of their convictions and sentences.

103.

Between at least March 25, 2008 and March 25, 2015, it was the policy and practice of Defendants to remove from SITP prisoners who failed to advance through the "Tag System."

104.

Between at least March 25, 2008 and March 25, 2015, it was the policy and practice of Defendants that if a prisoner was removed from SITP he would be transferred from OYA physical custody to the physical custody of ODOC.

105.

Between at least March 25, 2008 and March 25, 2015, prisoners who wished to file legal challenges of their convictions and sentences were regularly threatened by Defendants with transfer to adult prison.

106.

Between at least March 25, 2008 and March 25, 2015, prisoners were regularly chilled from exercising their fundamental constitutional right to legal challenges of their convictions and sentences by Defendants telling them that they would be raped, stabbed and otherwise physically assaulted in adult prison.

107.

Between at least March 25, 2008 and March 25, 2015, Plaintiffs Canales-Robles and Lopez-Cervantes lacked the financial resources to retain private counsel to assist them with

challenging their convictions and sentences.

108.

Upon information and belief, between at least March 25, 2008 and March 25, 2015, Defendants knew that youth offenders including Plaintiffs Canales-Robles and Lopez-Cervantes who were sentenced the legal custody of ODOC but confined in the physical custody of OYA were denied meaningful access to the courts, but failed to act to correct the deficiencies.

109.

Upon information and belief, between at least March 25, 2008 and March 25, 2015, Defendants intentionally or recklessly ignored and disregard the fundamental constitutional rights to assistance in accessing the court and to access the courts without active interference from Defendants, of all inmates confined in OYA physical custody, including Plaintiffs Canales-Robles and Lopez-Cervantes.

110.

At all times relevant, all Defendants were aware of the particular vulnerabilities of Plaintiffs Canales-Robles and Lopez-Cervantes, and other OYA inmates, including their youth, inexperience in the legal system, poverty, lack of family or community support, lack of education, emotional vulnerabilities, and mental health problems.

111.

Upon information and belief, between at least March 25, 2008 and March 25, 2015, Defendants intentionally and/or recklessly used their knowledge described in paragraph 110, supra, in order to prevent Plaintiffs Canales-Robles and Lopez-Cervantes and other MacLaren inmates from challenging their criminal convictions and sentences.

112.

Plaintiff Canales-Robles turned 25 years old on August 4, 2014.

113.

Plaintiff Lopez-Cervantes turned 25 years old on March 26, 2015.

114.

Defendants told Plaintiffs Canales-Robles and Lopez-Cervantes that they were going to be transferred to the physical custody of ODOC due to turning 25 years old.

115.

Defendants told Plaintiffs Canales-Robles and Lopez-Cervantes that they were not going to be allowed to take any of their personal property or legal materials with them to ODOC custody and would need to send it home.

116.

Prior to being transferred from MacLaren to ODOC custody, Plaintiffs Canales-Robles and Lopez-Cervantes were ordered by Defendants to send all of their personal property, including legal papers, home.

117.

Pursuant to OAR 291-052-0035(3), on or about August 1, 2014, Plaintiff Canales-Robles was transferred from MacLaren to the ODOC Intake Center at the Coffee Creek Correctional Institution (CCCF) in Wilsonville, Oregon to facilitate Plaintiff's transfer into the physical custody of ODOC for the completion of the remainder of his sentence.

118.

On or about August 12, 2014, Plaintiff Canales-Robles was transferred from CCCF to the OSCI.

119.

Pursuant to OAR 291-052-0035(3), on or about March 25, 2015, Plaintiff Lopez-Cervantes was transferred from MacLaren to the ODOC Intake Center at the CCCF in Wilsonville, Oregon to facilitate Plaintiff's transfer into the physical custody of ODOC for the completion of the remainder of his sentence.

120.

On or about April 8, 2015, Plaintiff Lopez-Cervantes was transferred from CCCF to the OSCI.

121.

The two-year statute of limitations for Plaintiff Canales-Robles to file a PCR action expired on or about April 13, 2012, some 28 months before Plaintiff was transferred from the physical custody of OYA to the physical custody of ODOC.

122.

The one-year statute of limitations for Plaintiff Canales-Robles to file a federal habeas corpus petition under 28 U.S.C. § 2254 expired on or about April 13, 2011, some 40 months before Plaintiff was transferred from the physical custody of OYA to the physical custody of ODOC.

123.

The two-year statute of limitations for Plaintiff Lopez-Cervantes to file a PCR action expired on or about November 12, 2010, some 52 months before Plaintiff was transferred from the physical custody of OYA to the physical custody of ODOC.

124.

The one-year statute of limitations for Plaintiff Lopez-Cervantes to file a federal habeas

corpus petition under 28 U.S.C. § 2254 expired on or about November 12, 2009, some 62 months before Plaintiff was transferred from the physical custody of OYA to the physical custody of ODOC.

125.

From his March 25, 2008 admission into the legal custody of the ODOC and physical custody of OYA until his August 12, 2014 transfer to the OSCI, Plaintiff Canales-Robles was denied access to a law library and legal assistance.

126.

From his September 30, 2008 admission into the legal custody of the ODOC and physical custody of OYA until his March 25, 2015 transfer to the OSCI, Plaintiff Lopez-Cervantes was denied access to a law library and legal assistance.

127.

Upon his arrival at OSCI, Plaintiffs Canales-Robles believed that he did not have any chance of filing a PCR or federal habeas corpus action because the statutes of limitations for filing those actions expired 28 and 40 months, respectively, before his transfer from the physical custody of OYA to ODOC.

128.

Upon his arrival at OSCI, Plaintiffs Lopez-Cervantes believed that he did not have any chance of filing a PCR or federal habeas corpus action because the statutes of limitations for filing those actions expired 52 and 62 months, respectively, before his transfer from the physical custody of OYA to ODOC.

129.

Plaintiffs Canales-Robles and Lopez-Cervantes have recently been informed that they

may be able to file untimely PCR and federal habeas corpus actions, despite expiration of the applicable statute of limitations periods, because Defendants deprived them of their fundamental constitutional right to access the courts from March 25, 2008 through March 25, 2015 by failing to "assist [them] in the preparation of meaningful legal papers by providing [them] with [an] adequate law librar[y] or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828.

130.

On or about July 1, 2016, Plaintiff Canales-Robles filed an untimely post-conviction relief petition in *Hector Fernando Canales-Robles v. Christine Popoff,* Marion County Circuit Court No. _____, asserting the meritorious PCR claims that he could, and would, have filed in a timely PCR action had he not been denied a law library or legal assistance from approximately March 25, 2008 until August 12, 2014. That action is currently pending in the Marion County Circuit Court.

131.

On or about July 1, 2016, Plaintiff Lopez-Cervantes filed an untimely post-conviction relief petition in *Saamir B. Lopez-Cervantes v. Christine Popoff,* Marion County Circuit Court No. _____, asserting the meritorious PCR claims that he could, and would, have filed in a timely PCR action had he not been denied a law library or legal assistance from approximately September 30, 2008 until March 25, 2015. That action is currently pending in the Marion County Circuit Court.

132.

No administrative remedies are available for Plaintiffs Canales-Robles and/or Lopez-Cervantes to exhaust with respect to the violations alleged herein.

## Claims for Relief

### FIRST CLAIM FOR RELIEF:

### (Denial of Meaningful Access to the Courts, 1st & 14th Amends., U.S. Const.)

133.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 132, above, and incorporates those allegations herein by this reference.

134.

The acts and omissions of Defendants in failing to assist Plaintiffs Canales-Robles and all other OYA inmates in the preparation and filing of a timely petition for post-conviction relief, pursuant to ORS 138.510 *et seq.,* and/or a timely petition for a federal writ of habeas corpus, pursuant to 28 USC § 2254, deprived Plaintiff Canales-Robles of his right to pursue those legal remedies and his fundamental constitutional right of meaningful access to the courts, in violation of the First, and Fourteenth Amendments to the United States Constitution.

135.

The acts and omissions of Defendants in failing to assist Plaintiffs Lopez-Cervantes and all other OYA inmates in the preparation and filing of a timely petition for post-conviction relief, pursuant to ORS 138.510 *et seq.*, and/or a timely petition for a federal writ of habeas corpus, pursuant to 28 USC § 2254, deprived Plaintiff Lopez-Cervantes of his right to pursue those legal remedies and his fundamental constitutional right of meaningful access to the courts, in violation of the First, and Fourteenth Amendments to the United States Constitution.

/ / / / /

/ / / / /

## SECOND CLAIM FOR RELIEF:

## (Interference with Meaningful Access to the Courts, 1st & 14th Amends., U.S. Const.)

136.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 132, above, and incorporates those allegations herein by this reference.

137.

The acts and omissions of Defendants in actively interfering with and impeding Plaintiff Canales-Robles and all other OYA prisoners from filing a timely petition for post-conviction relief, pursuant to ORS 138.510, *et seq.*, and/or a timely federal habeas corpus petition, pursuant to 28 USC § 2254, deprived Plaintiff Canales-Robles of his right to pursue those legal remedies and his fundamental constitutional right to meaningful access to the courts, in violation of the First and Fourteenth Amendments to the United States Constitution.

138.

The acts and omissions of Defendants in actively interfering with and impeding Plaintiff Lopez-Cervantes and all other OYA prisoners from filing a timely petition for post-conviction relief, pursuant to ORS 138.510, *et seq.*, and/or a timely federal habeas corpus petition, pursuant to 28 USC § 2254, deprived Plaintiff Lopez-Cervantes of his right to pursue those legal remedies and his fundamental constitutional right to meaningful access to the courts, in violation of the First and Fourteenth Amendments to the United States Constitution.

/ / / / /

/ / / / /

/ / / / /

Page: 33 of 42 – VERIFIED COMPLAINT (42 USC § 1983)

## THIRD CLAIM FOR RELIEF:

## (Denial of Equal Protection of the Law, 14th Amends., U.S. Const.)

139.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 132, above, and incorporates those allegations herein by this reference.

140.

Treating juvenile offenders more harshly than adult offenders without a rational basis for doing so constitutes an equal protection violation. *See e.g., White v. Belleque,* 2010 US Dist LEXIS 140364 (D. Or. 2010).

141.

"[N]o sensible reason" exists "for treating juveniles more harshly than adults." *Jonah R. v. Carmona,* 446 F3d 1000, 1011 (9th Cir. 2006).

142.

The acts and omissions of Defendants in depriving Plaintiffs Canales-Robles, Lopez-Cervantes and all other juveniles offenders who were sentenced to the legal custody of ODOC but confined within OYA physical custody of their fundamental constitutional right to meaningful access to the courts by denying them access to legal resources and assistance that they would have been afforded had they been confined within the physical custody of the ODOC, solely on the basis of their status as juvenile offenders who were entitled to *greater* protection under the law than adults, deprives Plaintiffs Canales-Robles and Lopez-Cervantes of equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.

## SUPPLEMENTAL JURISDICTION CLAIMS:

## FOURTH CLAIM FOR RELIEF:

### (Denial of Meaningful Access to the Courts, Art. I, §§ 1, 8, & 10, Or. Const.)

143.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 132, above, and incorporates those allegations herein by this reference.

144.

The acts and omissions of Defendants in failing to assist Plaintiffs Canales-Robles and all other OYA inmates in the preparation and filing of a timely petition for post-conviction relief, pursuant to ORS 138.510 *et seq.,* and/or a timely petition for a federal writ of habeas corpus, pursuant to 28 USC § 2254, deprived Plaintiff Canales-Robles of his right to pursue those legal remedies and his fundamental constitutional right of meaningful access to the courts, in violation of Article I, sections 1, 8, and 10, of the Oregon Constitution.

145.

The acts and omissions of Defendants in failing to assist Plaintiffs Lopez-Cervantes and all other OYA inmates in the preparation and filing of a timely petition for post-conviction relief, pursuant to ORS 138.510 et seq., and/or a timely petition for a federal writ of habeas corpus, pursuant to 28 USC § 2254, deprived Plaintiff Lopez-Cervantes of his right to pursue those legal remedies and his fundamental constitutional right of meaningful access to the courts, in violation of Article I, sections 1, 8, and 10, of the Oregon Constitution.

/ / / / /

/ / / / /

## FIFTH CLAIM FOR RELIEF:

**(Interference with Meaningful Access to the Courts, Art. I, §§ 1, 8, & 10, Or. Const.)**

146.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 132, above, and incorporates those allegations herein by this reference.

147.

The acts and omissions of Defendants in actively interfering with and impeding Plaintiff Canales-Robles and all other OYA inmates from filing a timely petition for post-conviction relief, pursuant to ORS 138.510, *et seq.,* and/or a timely federal habeas corpus petition, pursuant to 28 USC § 2254, deprived Plaintiff Canales-Robles of his right to pursue those legal remedies and his fundamental constitutional right to meaningful access to the courts, in violation of Article I, sections 1, 8, and 10, of the Oregon Constitution.

148.

The acts and omissions of Defendants in actively interfering with and impeding Plaintiff Lopez-Cervantes and all other OYA inmates from filing a timely petition for post-conviction relief, pursuant to ORS 138.510, *et seq.,* and/or a timely federal habeas corpus petition, pursuant to 28 USC § 2254, deprived Plaintiff Lopez-Cervantes of his right to pursue those legal remedies and his fundamental constitutional right to meaningful access to the courts, in violation of Article I, sections 1, 8, and 10, of the Oregon Constitution.

/ / / / /

/ / / / /

/ / / / /

## SIXTH CLAIM FOR RELIEF:

### (Denial of Equal Protection of the Law, Art. I, § 20, Or. Const.)

149.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 132, above, and incorporates those allegations herein by this reference.

150.

Treating juvenile offenders more harshly than adult offenders without a rational basis for doing so constitutes an equal protection violation. *See e.g., White v. Belleque,* 2010 US Dist LEXIS 140364 (D. Or. 2010).

151.

"[N]o sensible reason" exists "for treating juveniles more harshly than adults." *Jonah R. v. Carmona,* 446 F3d 1000, 1011 (9th Cir. 2006).

152.

The acts and omissions of Defendants in depriving Plaintiffs Canales-Robles, Lopez-Cervantes and other juveniles offenders who were sentenced to the legal custody of ODOC but confined within OYA physical custody for their protection, of their fundamental constitutional right to meaningful access to the courts by denying them access to legal resources and assistance that they would have been afforded had they been sentenced to the physical custody of the ODOC, solely on the basis of their status as juvenile offenders who were entitled to *greater* protection under the law than adults, deprives Plaintiffs Canales-Robles and Lopez-Cervantes of equal protection of the law in violation of Article I, section 20, of the Oregon Constitution.

/ / / / /

## SEVENTH CLAIM FOR RELIEF:

### (Unnecessary Rigor, Art. I, § 13, Or. Const.)

153.

Plaintiff re-alleges each and every allegation of paragraphs 1 through 132, above, and incorporates those allegations herein by this reference.

154.

The acts and omissions of Defendants in actively interfering with and impeding Plaintiff Canales-Robles and all other OYA inmates from filing a timely petition for post-conviction relief, pursuant to ORS 138.510, *et seq.,* and/or a timely federal habeas corpus petition, pursuant to 28 USC § 2254, deprived Plaintiff Canales-Robles of his right to pursue those legal remedies and subjects him to unnecessary rigor, in violation of Article I, section 13, of the Oregon Constitution.

155.

The acts and omissions of Defendants in actively interfering with and impeding Plaintiff Lopez-Cervantes and all other OYA inmate from filing a timely petition for post-conviction relief, pursuant to ORS 138.510, *et seq.,* and/or a timely federal habeas corpus petition, pursuant to 28 USC § 2254, deprived Plaintiff Lopez-Cervantes of his right to pursue those legal remedies and subjects him to unnecessary rigor, in violation of Article I, section 13, of the Oregon Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Canales-Robles and Lopez-Cervantes respectfully pray that this Court will enter a Judgment in his favor, and against Defendants, as follows:

Page: 38 of 42 – VERIFIED COMPLAINT (42 USC § 1983)

A.    Grant Plaintiffs declaratory relief, declaring that Defendants have:

1.    Deprived Plaintiffs of their fundamental constitutional right to access to the courts, in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, sections 1, 8, and 10 of the Oregon Constitution;

2.    Interfered with Plaintiffs' fundamental constitutional right to access to the courts, in violation of the First and Fourteenth Amendments to the United States Constitution and Article I, sections 1, 8, and 10 of the Oregon Constitution;

3.    Deprived Plaintiffs of equal protection of the law without a rational basis for doing so, in violation of the Fourteenth Amendment to the United States Constitution and Article I, section 20, of the Oregon Constitution.

4.    Subjected Plaintiffs to unnecessary rigor in violation of Article I, section 13, of the Oregon Constitution.

B.    Grant Plaintiffs, and the Plaintiff class, injunctive relief, requiring Defendants to immediately:

1.    Waive any and all claims and defenses that the post-conviction relief proceeding in *Hector Fernando Canales-Robles v. Christine Popoff,* Marion County Circuit Court No. _____ is untimely under ORS 138.510(3) and ORS 138.550(3).

3.    Waive any and all claims and defenses that any subsequently filed federal habeas corpus action pursuant to 28 USC § 2254 by Plaintiff Canales-Robles is untimely under 28 USC § 2244(d)(1).

4.    Provide Plaintiff Canales-Robles with a declaration that may be used as evidence in the post-conviction relief proceeding in *Hector Fernando Canales-Robles v. Christine Popoff,*

Page: 39 of 42 – VERIFIED COMPLAINT (42 USC § 1983)

Marion County Circuit Court No. _____ and any subsequently filed federal habeas corpus actions pursuant to 28 USC § 2254, admitting that while at MacLaren from March 25, 2008 through August 1, 2014, Plaintiff was denied access to a law library and assistance from persons who are trained in the law, and that such deprivation prevented Plaintiff Canales-Robles from filing timely post-conviction relief and federal habeas corpus petitions.

5.    File a joint motion with counsel for Plaintiff Canales-Robles in the post-conviction relief action in *Hector Fernando Canales-Robles v. Christine Popoff*, Marion County Circuit Court No. _____, requesting that the court find that the "grounds for relief asserted [in the petition for post-conviction relief] . . . could not reasonably have been raised in" a timely post-conviction relief action. ORS 138.510(3); and ORS 138.550(3).

6.    File a joint motion with counsel for Plaintiff Canales-Robles in the post-conviction relief action in any subsequently filed federal habeas corpus actions pursuant to 28 USC § 2254, requesting that the court find that the grounds for relief that Plaintiff asserts could not reasonably have been raised in a timely federal habeas corpus action under 28 USC § 2254, and that equitable tolling of the statute of limitations period allows for the filing of Plaintiff's untimely federal habeas corpus action.

7.    Waive any and all claims and defenses that the post-conviction relief proceeding in *Saamir B. Lopez-Cervantes v. Christine Popoff*, Marion County Circuit Court No. _____ is untimely under ORS 138.510(3) and ORS 138.550(3).

8.    Waive any and all claims and defenses that any subsequently filed federal habeas corpus action pursuant to 28 USC § 2254 by Plaintiff Lopez-Cervantes is untimely under 28 USC § 2244(d)(1).

9.    Provide Plaintiff Lopez-Cervantes with a declaration that may be used as evidence in the post-conviction relief proceeding in *Saamir B. Lopez-Cervantes v. Christine Popoff,* Marion County Circuit Court No. _____ and any subsequently filed federal habeas corpus actions pursuant to 28 USC § 2254, admitting that while at MacLaren from September 30, 2008 through March 25, 2015, Plaintiff was denied access to a law library and assistance from persons who are trained in the law, and that such deprivation prevented Plaintiff Lopez-Cervantes from filing timely post-conviction relief and federal habeas corpus petitions.

10.    File a joint motion with counsel for Plaintiff Lopez-Cervantes in the post-conviction relief action in *Saamir B. Lopez-Cervantes v. Christine Popoff,* Marion County Circuit Court No. _____, requesting that the court find that the "grounds for relief asserted [in the petition for post-conviction relief] . . . could not reasonably have been raised in" a timely post-conviction relief action. ORS 138.510(3); and ORS 138.550(3).

11.    File a joint motion with counsel for Plaintiff Lopez-Cervantes in the post-conviction relief action in any subsequently filed federal habeas corpus actions pursuant to 28 USC § 2254, requesting that the court find that the grounds for relief that Plaintiff asserts could not reasonably have been raised in a timely federal habeas corpus action under 28 USC § 2254, and that equitable tolling of the statute of limitations period allows for the filing of Plaintiff's untimely federal habeas corpus action.

C.    Grant Plaintiffs Canales-Robles and Lopez-Cervantes nominal damages in the amount of $1.00 against Defendants jointly and severally in their individual capacities.

D.    Grant Plaintiffs Canales-Robles and Lopez-Cervantes compensatory damages against Defendants, jointly and severally in their individual capacities, in an amount to be determined at trial.

Page: 41 of 42 – VERIFIED COMPLAINT (42 USC § 1983)

E.      Grant Plaintiffs Canales-Robles and Lopez-Cervantes punitive damages against Defendants, jointly and severally in their individual capacities, in an amount to be determined at trial.

F.      Grant Plaintiffs Canales-Robles and Lopez-Cervantes all reasonable costs, expenses, and attorney's fees pursuant to 42 U.S.C. § 1988.

G.      Grant Plaintiffs Canales-Robles and Lopez-Cervantes such further relief as this court deems just and equitable under the circumstances.

G.      Grant Plaintiffs Canales-Robles and Lopez-Cervantes such other relief as is equitable and just.

**Pursuant to 28 U.S.C. § 1746(2), I hereby verify and declare under penalty of perjury that the foregoing is true and correct.**

DATED this 1st day of July, 2016.

Respectfully submitted,

HECTOR FERNANDO CANALES-ROBLES
Plaintiff Pro Se
SID # 16888023
Oregon State Correctional Institution
3405 Deer Park Drive SE
Salem, OR 97310
Telephone: None
Plaintiff, *pro se*

SAAMIR B. LOPEZ-CERVANTES
Plaintiff Pro Se
SID # 17288720
Oregon State Correctional Institution
3405 Deer Park Drive SE
Salem, OR 97310
Telephone: None
Plaintiff, *pro se*

Hector Fernando Canales-Robles
SID # 16888023
Oregon State Correctional Inst
3405 Deer Park Drive SE
Salem, OR 97310

NEOPOST
07/05/2016
US POSTAGE $010.60º

PRIORITY MAIL

ZIP 97310
041M11273454

Clerk of the Court
United States District Court
405 E. 8th Ave, Suite 2100
Eugene, OR 97401